UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                          Case No. 15-cr-158-pp

KENYARI M. SANFORD,

    Defendant.

_____

**ORDER GRANTING DEFENDANT'S UNOPPOSED MOTION TO CORRECT JUDGMENT (DKT. NO. 69)**

_____

      On December 14, 2016, the court sentenced the defendant, after his guilty to plea to two counts of armed bank robbery and one count of Hobbs Act robbery. Dkt. No. 53.

      Four and a half months *before* this court sentenced the defendant, the Milwaukee County Circuit Court had revoked his extended supervision in State v. Sanford, 2010CF005675 (Milwaukee County), and had sentenced him to serve three years and two days in custody on that revocation. The presentence report indicated that the revocation was the result of the defendant's state probation agent having been notified of the allegations in this federal case. The presentence report also reflected that the defendant was, as of the date of the report, in *state* custody.

      Attorney Martin Pruhs represented the defendant at sentencing. Dkt. No. 52. Through Attorney Pruhs, the defendant filed a letter with the court, expressing his remorse for the crimes he committed. Dkt. No. 50. In that letter, the defendant asked the court to "run [his] sentence concurrent with [his] revocation by deducting 36 months from the top of [his] federal sentence," which he argued would "grant" him credit for "sitting in federal custody." Id. at

1

4. The defendant told the court that the Bureau of Prisons "has not been honoring concurrent sentences ordered by the courts . . . ." Id.

At the end of the December 14, 2016 sentencing hearing, the court sentenced the defendant to serve seventy-two months on each of the three counts, to run concurrently with each other. Dkt. No. 53. The court then asked Attorney Pruhs whether he wanted the court to make any specific recommendations in the order of judgment. Attorney Pruhs began to ask the court whether it intended that seventy-two-month sentence to run concurrently or consecutively to the Milwaukee County revocation sentence; before he could finish his sentence, the court interrupted and said that it intended the sentence to run concurrently. The court stated that it was imposing the seventy-two-month sentence to run concurrently with the sentence imposed in Milwaukee County Circuit Court case number 2010CF5675, and that it would state that specifically in the judgment. It noted that the defendant had expressed concerns about that issue in his letter to the court.

As the court was commenting on the defendant's concerns, the court's staff notified the court that it had misspoken regarding the length of the federal sentence—at one point, the court had said the sentence was sixty-two months, and at another, it had said the sentence was seventy-two months. The court digressed to emphasize that if it had said sixty-two months, it had misspoken—it meant to impose a federal sentence of seventy-two months in custody.

The court then returned to the issue of imposing the federal sentence to run concurrently with the state revocation sentence, and reiterated that it was imposing the federal sentence to run concurrently with the state revocation sentence. Attorney Pruhs then asked the court whether that concurrent sentence would begin running on the date the defendant was arrested for this

2

federal offense. The court responded by telling Attorney Pruhs that, "to be honest," the answer to that question was up to the BOP. The court explained that it had tried in other cases to state a specific date, on which the federal sentence would start to run, but that when the court had tried to do that, the BOP had responded that it had a calculation method that it used. The court stated that Congress had vested the authority to determine sentence credit solely with the BOP, and that the court could not influence that. The court said that all it could do was to recommend that the federal sentence run concurrently with the state sentence. The court told the parties that it had had other defendants complain to their lawyers that once they got into BOP custody, they had learned that the BOP was not calculating the federal and state sentences to run concurrently. The court said that if that happened to the defendant, he should notify Attorney Pruhs, and the court ("we") could get someone from the BOP "on the line" to "talk through" the issue and trying to find out "what's going on." The court said that all it was trying to tell Attorney Pruhs was that its past efforts to dictate a start date for the federal sentence had not met with success.

Attorney Pruhs then asked whether, to avoid having to come back to the court, the court would be willing to put in the order of judgment that the federal sentence should start to run as of the date of the defendant's arrest. Attorney Pruhs stated that, while he did not have citations with him in court, it was his understanding that the BOP would, as a "default," start the federal sentence running as of the date the federal court imposed it, unless the court put an earlier date into the order of judgment. The court responded that it was happy to put an earlier date into the order of judgment, but that it was just

letting Attorney Pruhs know that the last time it had tried that, it had been less than successful.

The court then asked the prosecutor whether she had any insight into the issue. The prosecutor was hesitant to weigh in. She indicated that she believed that the court was right that if a defendant was in state custody at the time he received a federal sentence, the BOP would calculate the federal sentence to start running as of the date the federal court imposed it. She indicated, however, that the defendant had been in federal custody for the past year and a half or so, that that it was her understanding that he'd been getting federal credit and state credit during that time. The court again interrupted, and indicated that it believed that that was just the point—that it was up to the *BOP* to decide how to calculate federal credit; as the court was saying this, a member of the marshal's service sitting in the back of the courtroom nodded, and the court took that nod as an affirmation that the court was right about that belief. The court again stated that it was happy to put an earlier date in the order of judgment, but reiterated that whatever date it put in the order, it understood that the BOP was going to calculate credit "however they're going to calculate it."

Attorney Pruhs then specifically asked the court to put the date of June 10, 2015—the date that officers from the Milwaukee Police Department's Fugitive Apprehension Unit sent to an apartment looking for the defendant, found him hiding in a kitchen refrigerator and arrested him—in the order of judgment. The court said, "I'll put it in and we'll see what happens."

In the original order of judgment, issued December 19, 2016, the court stated that it was imposing three seventy-two-month terms to run concurrently with each other; it stated that "[t]he seventy-two-month total sentence shall

4

run concurrently with the sentence imposed in Milwaukee County Circuit Court Case No. 10CF5675." Dkt. No. 53 at 2. That judgment hit the docket at 12:03 p.m. At 3:03 p.m. the same day, the court docketed an amended judgment. Dkt. No. 55. The amended judgment added the following language to the section on page two where the court made recommendations to the BOP: "and default the date of the sentence to June 10, 2015 – the defendant's arrest date." Id. at 2.

With the benefit of two years of hindsight and education, the court realizes that it was sloppy in making its intentions clear at the sentencing hearing—in part, because it was not fully grasping the significance of the issue. As of the December 14, 2016 federal sentencing date, the defendant had been in custody (after his arrest for the robberies charged in the federal case) for 704 days—one year, eleven months and four days. The court now understands, for a review of the docket, that the defendant had been in *state* custody during that time. The defendant first appeared in federal court on August 19, 2015 (over two months after his arrest); Magistrate Judge Nancy Joseph had to issue a writ of *habeas corpus ad prosequendum* to have him brought to federal court from state custody. Dkt. No. 3. At the end of that August 19, 2015 hearing, Judge Joseph lodged a federal *detainer*, a mechanism that notifies state authorities that when and if they release the defendant from *state* custody, they should release him to the federal authorities, not out into the community. Dkt. No. 5. The state court sentenced him to serve three years and two days when it revoked the defendant for the events that resulted in the federal charges. Between the August 19, 2015 initial appearance before Judge Joseph and the December 14, 2016 sentencing hearing before this court, the state authorities never released the defendant. He was in state custody the entire

5

time, which means that prior to December 14, 2016, he was not receiving credit against any future federal sentence (the way he would have had there been no state revocation charge, and he'd been in federal custody since his June 2015 arrest).

As of December 14, 2016, then, the defendant had served one year, eleven months and four days of his three-year-and-two-day state revocation sentence; he had 393 days (one year and twenty-eight days) left to serve on that sentence. When, on December 14, 2016, the court ordered the federal sentence to run concurrently with the state revocation sentence, that concurrent sentence could not go back and start in the past. It could run concurrently—at the same time—with the state sentence only for the time remaining on the state sentence. This means that the defendant served one year, eleven months and four days in state court for the events that resulted in his federal conviction, and now is serving seventy-two additional months for the events that resulted in his federal conviction, for a total of over ninety-five months—seven years and eleven months.

The prosecution was under the mistaken impression that the defendant had been getting credit toward his federal sentence in the months preceding sentencing. The court had not investigated this before sentencing; it should have done. Defense counsel and the defendant wanted the court to craft a sentence that somehow would give the defendant credit for the time he'd been sitting in state custody, and thought that the way to do that would be for the court to ask the BOP to start the federal sentence running as of the date of the defendant's arrest.

The court now knows that asking the BOP to "back-date" a federal sentence does not accomplish that defense counsel was requesting, and what

the government assumed had been happening. By letter dated November 9, 2018, dkt. no. 68, and in the current motion, dkt. 69, successor counsel has confirmed that when the defendant arrived in BOP custody after finishing the state revocation, he learned exactly that—that the BOP "does not 'default' or otherwise change the sentence dates. Those dates are controlled by statute." Dkt. No. 68 at 1.

Successor counsel points out in both his letter and the motion that there is an appropriate way to accomplish what defense counsel requested back in December 2016, and what the government and the defense agree now is the appropriate resolution. Section 5G1.3(b) of the Sentencing Guidelines allows a court to "adjust the sentence for any period of imprisonment already served on [a term of imprisonment resulting from another offense that is relevant conduct to the offense of federal conviction] if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons," and the federal sentence has been imposed to run concurrently with the undischarged term of that other sentence. Defense counsel—without opposition from the government—asks the court to adjust the defendant's federal sentence accordingly.

Over two years have passed since the court sentenced the defendant. That fact might have prevented the court from taking the action the parties recommend, if the defendant had brought this motion under Fed. R. Crim. P. 35(a) (which restricts the court to correcting a sentence within fourteen days). But counsel brings the motion under Fed. R. Crim. P. 36, which allows the court "at any time" to "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."

The court's recommendation in the amended judgment that the BOP "default" the date of the federal sentence to June 10, 2015 was such an error. The court will grant the defendant's motion, and will amend the judgment. Before it issues an amended judgment, however, the court needs clarification from the parties on one issue.

At sentencing, the government commented on the "year and a half" that the defendant had been in state custody. In his November 9, 2018 letter, defense counsel talked about "the 18 months" that the defendant spent in custody before the federal sentencing, and proposed that the court adjust the sentence downward under §5G1.3(b) by eighteen months. Dkt. No. 68. By the court's calculations, however, the defendant was in state custody for twenty-three (23) months and four days before his federal sentencing.

The court will grant this unopposed motion for the reasons discussed above, but it will hold off issuing an amended judgment to give the parties to confirm the exact amount of the downward adjustment they are asking the court to make.

The court **GRANTS** the defendant's unopposed motion to correct judgment. Dkt. No. 69. The court **ORDERS** that by the end of the day on **Friday, January 25, 2019**, the parties shall file a joint statement notifying the court of their positions on the amount of the appropriate downward reduction.

Dated in Milwaukee, Wisconsin this 14th day of January, 2019.

                                            **BY THE COURT:**

                                            **HON. PAMELA PEPPER**
                                            **United States District Judge**